UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY GLAZE,<br><br>         Plaintiff,<br><br>     v.<br><br>STANE, et al.,<br><br>         Defendants. | Case No.: 1:14-cv-01153-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANT STANE'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, AND DOE DEFENDANTS BE DISMISSED FROM THE ACTION<br><br>[ECF No. 26] |

Plaintiff Rodney Glaze is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Neither party has consented or declined to United States Magistrate Judge jurisdiction; therefore, this matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Currently before the Court is Defendant Stane's motion for summary judgment, filed April 14, 2016.

**I.**

**RELEVANT HISTORY**

This action proceeds against Defendant Stane for cruel and unusual punishment in violation of the Eighth Amendment.

On June 5, 2015, Defendant filed an answer to the complaint. On June 8, 2015, the Court issued the discovery and scheduling order.

As previously stated, Defendant Stane filed a motion for summary judgment. Plaintiff did not file an opposition. Therefore, this motion is deemed submitted for review, without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the

1 light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.

### DISCUSSION

**A.     Allegations of Plaintiff's Complaint[1]**

Plaintiff alleges that while he was housed at Kern Valley State Prison (KVSP) in Delano, California, he was placed on "pottie watch" based on misinformation received by the KVSP administration that he was in possession of drugs.  Plaintiff contends that Defendant was in charge of him during his "pottie watch."  Plaintiff was forced to pull down his boxers and sit on a towel so a dog could sniff it.  Plaintiff was then placed into a contraband outfit consisting of two jumpsuits, one placed on the correct way and the other placed backwards.  Plaintiff's legs were chained together with tape wrapped around his ankles, and his wrists were in handcuffs and also taped.  Plaintiff was forced to drink water out of a cup he had to share with another inmate.  Because of the shackles, as well as lack of food and sleep, Plaintiff's legs were twisted in the leg restraints, causing him to trip and hit his head on a metal sink bowl in the cell, knocking him unconscious.  Plaintiff was subsequently taken to

---

[1] This action is proceeding on Plaintiff's third amended complaint, filed March 26, 2015, signed under penalty of perjury. (ECF No. 17.)

medical and a knot the size of a gold ball appeared on the side of his face. Plaintiff was only provided an ice pack but was not uncuffed so he could apply pressure, so the ice was not effective. Sometime after the fall, Plaintiff defecated on himself. Over a period of seven days, Plaintiff was not provided soap, clean water to bathe, or eating utensils.

### B. Undisputed Facts[2]

1. At all times relevant to this case, Plaintiff was a state prisoner incarcerated at Kern Valley State Prison (KVSP) in Delano, California. (Third Amd. Compl., ECF No. 17 at 2.)

2. At all times relevant to this complaint, Defendant was employed as a correctional officer and assigned to search and escort duties at KVSP. (Stane Decl. at ¶ 2.)

3. On October 3, 2010, Defendant came to Plaintiff's cell, placed him in handcuffs, and escorted him to a shower area, where Defendant conducted an unclothed body search of Plaintiff. (ECF No. 17 at 10.)

4. While conducting this search, Defendant believed he saw something in Plaintiff's rectal cavity. (Stane Decl. ¶ 2; Hennes Decl., Ex. A, Pl. Dep. at 24:22-25:11.)

5. Defendant then placed Plaintiff into a holding cell and reported his findings to his supervisors, at which point he was instructed to enter Plaintiff into the contraband watch protocol. (Stane Decl. ¶ 2.)

6. As part of the contraband watch protocol, Defendant instructed Plaintiff to attire himself with two jumpsuits, one facing backwards and the other facing the correct direction. (Stane Decl. ¶ 4, Ex. A; ECF No. 17 at 3, 11.)

7. Defendant observed Plaintiff place socks on his feet. (Stane Decl. at ¶ 4.)

---

[2] **Error! Main Document Only.**Plaintiff did not file an opposition, and therefore, the Court was left to compile the summary of undisputed facts from Defendant's statement of undisputed facts and Plaintiff's verified complaint. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e). Because plaintiff neither submitted his own statement of disputed facts nor addressed defendants' statement of undisputed facts, the court accepts defendants' version of the undisputed facts where plaintiff's verified complaint is not contradictory. The court notes for the record that plaintiff was provided with the requirements for opposing a motion for summary judgment. (Doc. 26.) Therefore, the requirements of Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) have been satisfied.

8. Defendant taped Plaintiff's waist, thighs, and ankles and applied ankle restraints. Defendant also placed security gloves on Plaintiff's hands and covered those gloves with socks, then applied waist restraints and cuffs. (Stane Decl. at ¶ 4; ECF No. 17 at 3, 11.)

9. Defendant then escorted Plaintiff to the contraband surveillance watch holding cell on D-yard. (Id.)

10. Later that day, Plaintiff received a meal at dinner in a hard plastic tray. (ECF No. 17 at 11; Hennes Decl. at 30:15-31:1.)

11. Because the correctional officer on watch at that time did not provide him utensils, Plaintiff refused to eat. (ECF No. 17 at 11.)

12. At some point later that night, Plaintiff tripped over his ankle restraints and struck his head on the metal toilet in the cell. (ECF No. 17 at 11; Pl. Dep. at 52:13-18.)

13. The correctional officer on watch at that time asked if Plaintiff was hurt, and at Plaintiff's request, the officer called a nurse. (ECF No. 17 at 13.)

14. The nurse provided Plaintiff with an ice pack, which Plaintiff could not effectively use due to his restraints. (ECF No. 17 at 13.)

15. Plaintiff was then taken to the medical clinic, where he received a painkiller that successfully reduced his pain. (ECF No. 17 at 13.)

16. Plaintiff was returned to his holding cell after he received the painkiller. (ECF No. 17 at 13.)

17. At some point in the next couple of days, Plaintiff informed the correctional officer on watch that he had to use the bathroom, and before the officer could remove the contraband outfit to allow Plaintiff to relieve himself, Plaintiff defecated on himself. (ECF No. 17 at 4, 13.)

18. The officer on watch removed the soiled jumpsuits and checked them thoroughly for contraband. (ECF No. 17 at 13.)

19. Plaintiff was then provided a clean jumpsuit to wear. (Hennes Decl. at 44:8-18.)

20. On the Tuesday after that, Plaintiff was transferred to the contraband watch holding cell on B-yard. (ECF No. 17 at 13; Pl. Dep. at 43:15-24; Stane Decl. ¶ 6.)

21. During Plaintiff's transfer to B-yard, Defendant replaced Plaintiff's attire with two new jumpsuits in accordance with the contraband watch policy. (ECF No. 17 at 13; Pl. Dep. at 43:24-44:4; Stane Decl. ¶ 6.)

22. During Plaintiff's time on contraband watch, several different officers were assigned to maintain surveillance of Plaintiff's holding cell. (Pl. Dep. at 39:9-16; 41:2-21.)

### C. Cruel and Unusual Punishment

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." Id.

As previously stated, Plaintiff contends that Defendant Stane violated his Eighth Amendment right by placing him on contraband watch. For the following reasons, Defendant Stane is entitled to summary judgment as there is insufficient evidence to support a finding that Stane acted with deliberate indifference to Plaintiff's personal health and safety, and, in the alternative, Defendant Stane is entitled to qualified immunity.

///
///

1.     <u>Deliberate Indifference to Plaintiff's Health and Safety</u>

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000), but not every injury that a prisoner sustains while in prison represents a constitutional violation. <u>Morgan</u>, The Ninth Circuit has held that subjection of a prisoner to prolonged or severe lack of sanitation can satisfy the objective component of a deliberate indifference claim. <u>Johnson v. Lewis</u>, 217 F.3d at 731.

In this case, Plaintiff alleges that he defecated on himself during his placement on contraband watch, was not provided soap, clean water to bathe, or utensils, forced to share water with another inmate, tripped and fell injuring himself while pacing in the cell, and having to eat meals with his hands. (ECF No. 17 at 4.) However, even assuming that Plaintiff alleged sufficient facts to support a finding of an objectively serious harm, Plaintiff has failed to show that Defendant Stane acted with deliberate indifference toward him.

As an initial matter, liability under 42 U.S.C. § 1983 must be based on the personal involvement of the defendant. <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998). "A plaintiff seeking relief under this section must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." <u>Id.</u> "Deliberate indifference is a high legal standard," <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004), and requires a "sufficiently culpable state of mind," <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005). It requires more than negligence or gross negligence. <u>Farmer</u>, 511 U.S. at 835; <u>Kennedy v. City of Ridgefield</u>, 439 F.3d 1055, 1064 (9th Cir. 2006). The defendant must have acted with a conscious disregard of a substantial risk of serious injury. <u>Farmer</u>, 511 U.S. at 839-40. That is, the defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [] draw the inference." Id. at 838. Thus, if defendant did not know of the risk, then he could not inflict the injury. <u>Id.</u>

In this case, Defendant Stane conducted the search that subsequently led to Plaintiff's placement on contraband watch. (ECF No. 17 at 10; Stane Decl. ¶ 2; Pl. Dep. at 24:22-25:11.) Defendant believed that he saw contraband in Plaintiff's rectal cavity and reported this observation to

his supervising officer, who instructed Defendant to place Plaintiff on contraband watch. (Stane Decl. ¶ 2.) Contrary to Plaintiff's argument, it is undisputed that Defendant Stane was not personally responsible for Plaintiff's placement on contraband watch. Under KVSP contraband watch procedure, only a Captain may authorize an inmate's placement on contraband watch. (Stane Decl. ¶ 3; Ex. A.) It is undisputed Defendant was not a Captain at the time of Plaintiff's complaint. (Stane Decl. ¶ 3; Pl. Dep. at 49:11-18.) Furthermore, Defendant was never responsible for supervising the conditions under which Plaintiff was held, and he was not aware of any violations of the contraband watch policy during that time. (Shane Decl. ¶ 7.) Defendant Stane was also never assigned to maintain surveillance on Plaintiff while he was on contraband watch. (Stane Decl. ¶ 5; Pl. Dep. at 32:6-11; 35:19-36:2.) Plaintiff conceded that he saw Defendant only once during his placement on contraband watch, at which time Defendant replaced Plaintiff's jumpsuits after he informed Defendant he had soiled himself. (Pl. Dep. at 43:25-44:4.) Plaintiff admits that immediately after soiling himself, the correctional officer on watch (not Defendant) provided him with a clean jumpsuit to wear. (ECF No. 17 at 4, 13, Pl. Dep. at 44:8-18.) Plaintiff also admits that the next time he saw Defendant, Defendant replaced his new jumpsuit with two clean jumpsuits in accordance with the contraband watch policy. (Pl. Dep. at 43:25-44:4.) Although Plaintiff alleged the conditions of his contraband watch constituted cruel and unusual punishment, he has admitted that Defendant was not present for any of the conditions. (Pl. Dep. at 50:10-24.) At his deposition, Plaintiff also clarified that his only claim against Defendant Stane was for humiliating him by placing him on the contraband watch in the first place. (Pl. Dep. at 48:24-49:6.) Because Plaintiff has not shown that Defendant was aware of any substantial risk to his health or safety, or that Defendant Stane was personally involved in Plaintiff's placement on contraband watch, summary judgment in favor of Defendant Stane is warranted.

2. <u>Qualified Immunity</u>

Defendant argues in the alternative that he is entitled to qualified immunity because the law was not clearly established in this context. Defendant's argument has merit and therefore even if a constitutional violation was presented in this case, the right was not clearly established.

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Mueller v.</u>

8

Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted).  Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances.  Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

The dispositive inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.  "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. at 341.

In 2013, the Ninth Circuit held that conditions of contraband watch, which included continuous lighting, lack of mattress, tapping of clothing, hot cell with no ventilation, chaining to an iron bed, shackles at ankles and waist, and having to eat like a dog, did not prevent a finding of qualified immunity. Chappell v. Mandeville, 706 F.3d 1052, 1057-1062 (9th Cir. 2013).[3] The Ninth Circuit held that California's contraband security watch procedures are not unconstitutional per se, and the mere placement of an inmate on such watch does not support a constitutional violation.  Indeed,

---

[3] See also Diaz v. Cate, No. C 11-3459 CRB (PR), 2013 WL 4479262, *5 (N.D. Cal. Aug. 20, 2013) (noting that per se constitutionality of California's contraband surveillance watch procedure was unsettled as of 2010-the year of the alleged violation in this case).

Plaintiff's allegations in this case are less egregious than the conditions alleged in Chappell, and Plaintiff has not alleged the deprivation of any "single, identifiable human need such as food, warmth or exercise" that could establish an Eighth Amendment violation.  Id. at 1061.  There is little question that prison officials have a significant interest in preventing the introduction of contraband into prisons, and if an inmate is suspecting of concealing contraband, near-constant surveillance serves a legitimate penological interest.  Thus, the conditions imposed during the contraband watch were not "such a far cry from what any reasonable prison official could have believed was legal that the defendant[] knew or should have known [he was] breaking the law."  Id. at 1062.  Accordingly, even if Plaintiff presented an Eighth Amendment claim against Defendant Stane, Defendant is entitled to qualified immunity.

        3.     Doe Defendants

In the Court's March 21, 2015, screening order, the Court found that Plaintiff stated a cognizable Eighth Amendment claim against Defendant Stane and Does 1 and 2.  In the service order, the Court ordered Plaintiff to provide the Court with written notice identifying the Doe Defendants with enough information to locate them for service of process.  (ECF No. 19.)  Plaintiff failed to respond to the Court's order and never identified the Doe Defendants for service.  Thus, the Doe Defendants have never been served or identified in this action, and dismissal is warranted.  Fed. R. Civ. P. 4(m).  See, e.g., Wilson v. City of Merced, No. CV F 07-1235 LJO DLB, 2009 WL 331417, at *7 (E.D. Cal. Feb. 10, 2009) (citing Aviles v. Village of Bedford Park, 160 F.R.D. 565, 567 (N.D. Ill. 1995)) ("Doe defendants must be identified and served within 120 days of the commencement of the action against them.")[4]

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Defendant Stane's motion for summary judgment be GRANTED; and

2.     The Doe Defendants be dismissed from this action.

---

[4] Federal Rule of Civil Procedure 4(m) was amended (after service was ordered in this case) to 90 days for service of complaint.  Fed. R. Civ. P. 4(m).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **November 30, 2016**

UNITED STATES MAGISTRATE JUDGE